IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TERRI J. HELMS EDDY, | ) | Civil No.: 3:14-cv-01418-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

Nancy J. Meserow
Attorney at Law
7540 S.W. 51st Ave.
Portland, OR 97219

      Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Martha A. Boden
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

FINDINGS & RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Terri J. Helms Eddy ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed her application for SSI in February 2008, alleging disability beginning May 1, 2004.[1] Tr. 21, 76. Plaintiff's claim was denied initially and on reconsideration, and a hearing was held before administrative law judge ("ALJ") Joel T. Elliot. ALJ Elliot found Plaintiff not disabled in a decision dated May 7, 2010. Tr. 89. Plaintiff appealed to the Appeals Council, which granted review of the decision. On March 28, 2012, the Appeals Council remanded the case back to an ALJ, with instructions. Tr. 95-96. A second hearing was convened on November 15, 2012, this time before ALJ Dan Hyatt. Tr. 45-56. The ALJ issued the second decision on December 12, 2012, again finding Plaintiff not disabled. Tr. 21-36. The decision became the final decision of the Commissioner on July 9, 2014, when the Appeals Council denied Plaintiff's second request for review. Tr. 1-3. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Background

Born in May 1966, Plaintiff was 38 years old on the alleged onset date. Tr. 21, 76. Plaintiff graduated from high school and attended two years of college. Tr. 212. Plaintiff also

---

[1] Plaintiff apparently also filed an application for Disability Insurance Benefits ("DIB") in February 2008. However, that matter is not presently before the Court, and the DIB application is not part of the administrative record. The ALJ indicated the DIB application was denied upon initial consideration on April 17, 2007. Tr. 21.

completed a three-week training in hospitality services. Tr. 213. Plaintiff has past relevant work as a desk clerk and as a night auditor. Tr. 34, 72. Plaintiff alleges disability due to: fibromyalgia; multiple sclerosis ("MS"); epilepsy and/or seizures; glaucoma and/or vision problems; headaches; obesity; anxiety; asthma; diabetes; sleep apnea; and depression. Tr. 205; Pl.'s Br. 1.

### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an

FINDINGS & RECOMMENDATION - 3

impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 21, 2008, the SSI application date.

At the second step, the ALJ found plaintiff had the following severe impairments: multiple sclerosis, asthma, mild glaucoma, obesity, and depression. Tr. 23. The ALJ also noted

FINDINGS & RECOMMENDATION - 4

the non-severe impairments of diabetes, seizure disorder well-controlled with medication, and mild sleep apnea. Tr. 24. The ALJ recognized references to fibromyalgia in the record, but found "the records do not document the diagnosis and no limitations are noted that are shown to be specifically related to this condition." Id.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Id.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> perform medium work . . . including lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, standing six hours in an eight hour day, walking six hours in an eight hour day, and sitting six hours in an eight hour day. The [RFC] is compromised by no exposure to smoke, fumes, dust, or airborne irritants; no requirement for fine visual discrimination; only occasional contact with the public; and work consisting [of] up to, but not greater than, four step tasks.

Tr. 27.

At the fourth step of the disability analysis, the ALJ found Plaintiff unable to perform her past relevant work. Tr. 34. At step five, the ALJ determined that, based on the testimony of the VE, there was a significant number of other jobs in the national economy which Plaintiff retained the capacity to perform. Tr. 35.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act from the application date of February 21, 2008, though the date of the decision, December 20, 2012. Tr. 36.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff assigns the following errors to the ALJ's decision: (1) failure to provide adequate reasons to discredit her symptom allegations; (2) failure to provide adequate reasons to discredit lay testimony; (3) improper evaluation of treating physician Tanya Kapka, M.D. and state agency reviewing physician Richard Alley, M.D.; (4) not finding fibromyalgia, headaches,

and/or seizures severe impairments at step two; (5) formulating an inaccurate RFC; and (6)
further errors in identifying other work she is able to do in the national economy at step five.

1. Plaintiff's Testimony

The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting
effects of her symptoms were not fully credible. Tr. 28. The Ninth Circuit relies on a two-step
process for evaluating the credibility of a claimant's testimony about the severity and limiting
effect of the stated symptoms.[2] Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing
Lingenfelter v. Astrue, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine
whether the claimant has presented objective medical evidence of an underlying impairment
which could reasonably be expected to produce the pain or other symptoms alleged."
Lingenfelter, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence
of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms
only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d
1273, 1281 (9th Cir. 1996). However, a negative credibility finding made solely because the
claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence"
is legally insufficient. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).
Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales

---

[2] The Court notes that, although the two-step process remains operative, pursuant to SSR 16-3p,
the ALJ is no longer tasked with making an overarching credibility determination, and instead
assesses whether the claimant's subjective symptom statements are consistent with the record as
a whole. See SSR 16-3p, available at 2016 WL 1119029 (superseding SSR 96-7p). The ALJ's
decision was issued before SSR 16-3p became effective and there is no binding precedent
interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016
WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ
decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1
(N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the
ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the
Court need not resolve this issue.

for rejecting claimant testimony are upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359

F.3d 1190, 1197 (9th Cir. 2004).

The ALJ cited two primary reasons for declining to fully credit Plaintiff's symptom

allegations: (1) she did not fully comply with the recommendations of her physicians; and (2) her

allegations were not supported by the objective medical evidence.[3]

A claimant's failure to follow a treatment regimen has been recognized as a clear and

convincing reason to question the veracity of symptom allegations. Burch v. Barnhart, 400 F.3d

676, 681 (9th Cir. 2005) (citing Fair, 885 F.2d at 604). The ALJ noted evidence that Plaintiff was

reportedly "noncompliant" and "disinterested" in managing her health needs. Tr. 33; see tr. 1096.

The ALJ highlighted Dr. Kapka's comments regarding Plaintiff's obesity condition:

> Not at all motivated to do anything different. Gives lots of reasons
> why she still smokes despite worsening gastritis/esophagitis, still
> drinks sodas and eats poorly even though [she] has diabetes, does
> not pursue improved structures and behaviors that will help
> interactions with her children.

Tr.1096. Dr. Kapka expressed similar sentiments regarding Plaintiff's degenerative disc

condition:

> [Plaintiff] [i]s not motivated to increase physical activity or do
> anything other than take a pill when she is in pain. Does not seem
> to understand the relationship between her behaviors and her
> experience of her health conditions, even when pointed out.

Id. Further, Dr. Kapka noted Plaintiff was "not ready to quit" using tobacco, and "refuse[d]

adjunctive meds/counseling." Id. Finally, the ALJ explained that despite being advised to wear

---

[3] The Commissioner also argues the ALJ properly discredited Plaintiff's symptom allegations in
part because her statements were inconsistent internally and with prior statements. However, the
ALJ did not invoke this issue in his decision and therefore the Court may not uphold the ALJ's
non-disability determination on such grounds. See Connett v. Barnhart, 871, 874 (9th Cir. 2003)
(citations omitted).

socks to address complaints about calluses, Plaintiff responded that she hated wearing socks. Tr. 34.

Plaintiff acknowledges she was not always fully compliant with her physicians' treatment recommendations, but contends the rationale is not valid because there were other possible reasons for her noncompliance. Pl.'s Reply 15 (citing Lockwood v. Comm'r Soc. Sec. Admin., 397 F.App'x 288, 290 (9th Cir. 2010)). Indeed, the ALJ is not to draw inferences from a failure to seek treatment or follow a treatment regimen without first considering explanations or evidence in the record that explains such noncompliance. Social Security Ruling ("SSR") 96-7p, at *7; see also SSR 16-3p, at *8.

Regarding Plaintiff's failure to discontinue smoking, this District has repeatedly held that a plaintiff's continued tobacco use is not a clear and convincing reason to impugn her credibility, because nicotine addiction is the most likely reason such behavior persists. See, e.g., Jones v. Colvin, available at 2013 WL 3579523, at *6 (D.Or. July 18, 2014); Strutz v. Colvin, No. 3:14-cv-00807-SI, 2015 WL 4727459, at *7 (D.Or. Aug. 10, 2015). Here, Plaintiff testified that she had attempted to stop smoking, but was unsuccessful. Tr. 50-51. The ALJ did not recognize Plaintiff's explanation for her failure to stop smoking, and as such, the rationale should not be upheld.

Plaintiff further argues that like her tobacco addiction, her dietary choices were also not completely volitional, despite Dr. Kapka's recommendations. Pl.'s Reply 15-16. In support, Plaintiff cites a therapy chart note indicating her significant weight gain was a symptom of her depressive disorder. Id., tr. 571. Plaintiff explains that Dr. Kapka felt professional mental health intervention might be necessary to help with her dietary issues, including weening herself off of soda, adjusting her diet, and beginning to exercise. Tr. 1313. Thus, Plaintiff's position has some

support in the record. Although Dr. Kapka expressed frustration that Plaintiff was not "motivated" to make productive changes in her diet and apparently refused medication, the doctor indicated she "strongly encouraged" Plaintiff to see a behavioral health provider to address her personal health decisions, further supporting Plaintiff's argument. Tr. 1096, 1313.

However, the parties dispute whether Plaintiff in fact refused to get counseling to address her dietary issues. Def.'s Br. 16; Pl.'s Reply 16 n.10. The record is equivocal: it says both that Plaintiff was "offered BHP [a behavioral health provider] visit, refuses that. . . ," and, "[w]ill get a counselor through lifeworks." Tr. 1096. Thus, while the record reflects Plaintiff's resistance or inability to change her diet may have been affected by her depression, the record also suggests that she refused to accept the professional help offered to her, despite allegedly knowing she was not in full control of her eating habits. As such, it was not irrational for the ALJ to find Plaintiff's failure to treat was not only because her depression impaired her ability to change her habits, but also because she simply chose not to get the professional help Dr. Kapka offered her. Accordingly, the ALJ's finding is supported by substantial evidence, and therefore the Court does not have the discretion to second-guess it. Batson, 359 F.3d at 1193 (when evidence is susceptible to more than one rational interpretation, the reviewing court must uphold that of the ALJ). Further, although the ALJ did not discuss other reasons Plaintiff did not change her diet as directed, the error was harmless because Plaintiff endorsed a non-impairment related reason not to comply: she simply refused to get the treatment she needed. Tr. 1096, 1313; Robbins, 466 F.3d at 1054-55 (error is harmless if it is inconsequential to the ultimate non-disability determination).

Where, as here, it is not the sole reason to discredit a Plaintiff's symptom allegations, inconsistency with the objective medical evidence can constitute a clear and convincing

rationale. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff argues the ALJ erred in implicitly rejecting her testimony that she cannot lift or carry luggage, and has been advised not to lift more than 10 pounds. Pl.'s Br. 31-32; tr. 63, 69. The ALJ indicated Plaintiff's lift/carry allegations were not fully credible based on the findings of Dr. Alley, and the lack of evidence of physical impairment in Dr. Kapka's chart notes. Tr. 32, 33. Thorough review of the administrative record supports the ALJ's assertion: the medical record lacks any objective assessment of Plaintiff's precise lifting and carry abilities, and Dr. Kapka's chart notes – which cover years of treatment during the relevant time period – do not reflect any restriction of Plaintiff's ability to lift or carry. Similarly, although treating neurologist Daniel Friedman, M.D. infrequently noted subjective complaints of right-side upper extremity weakness, Plaintiff was typically found to have normal power, tone, and bulk in her extremities (tr. 1012, 1016, 1032, 1287, 1291), and/or expressly denied weakness on examination (tr. 1021, 1026, 1291, 1293).

The ALJ also impugned Plaintiff's allegations regarding fatigue, concentration, and memory deficits, finding they were contradicted by the records of treating neurologist Dr. Friedman. Tr. 33. Specifically, the ALJ found Dr. Friedman consistently reported Plaintiff's "concentration, remote memory, and recent memory are within normal limits." Tr. 33. Overall, the record is somewhat mixed regarding Plaintiff's memory allegations.[4] However, as the ALJ

---

[4] The record includes chart notes from Dr. Friedman in 2006, from March to September 2008, from April 2010 to August 2011, and from August 2012 to December 2012. Tr. 456-66, 1012-33, 1283-1297. In 2008, the doctor reported Plaintiff's concentration, and remote and recent memory were within normal limits. Tr. 729. At the April 2010 visit, Dr. Friedman did not comment on Plaintiff's memory or concentration. Tr. 1012. In July 2010, Plaintiff reported an episode of memory loss; although the doctor questioned whether the episode was an epileptic seizure, he did not appear to doubt the episode occurred. Tr. 1016-17. At a visit in August 2010, Plaintiff reported she had not had subsequent episodes of confusion and/or memory loss. Tr. 1018. A month later, Plaintiff reported further episodes of staring and "loss of time." Tr. 1021. The doctor felt the episodes suggested the possibility of "absence seizures," and instructed Plaintiff not to drive. <u>Id.</u> In November 2010, Plaintiff again reported no episodes of loss of time, although she

stated, the record generally shows that when Plaintiff is taking her medication as directed, she does not have significant seizure activity or corresponding episodes of confusion and/or memory loss. Further, even when Plaintiff reported episodes of memory and/or time loss, Dr. Friedman consistently found her alert and oriented to place, time, and situation during his examination. See supra, n.4. Additionally, there are only two chart notes, both from 2006, where Plaintiff reported inability to concentrate. Tr. 462-63.

With regard to Plaintiff's allegations of attention deficits, although there are anecdotal reports of "staring spells," the Court is unable to locate, nor does Plaintiff identify, any objective medical evidence of a persistent attention deficit. Although Plaintiff may not be able to remain attentive during a seizure or staring spell, there is no indication this impairment meets the durational requirements of the Act, and moreover, substantial evidence reflects Plaintiff's seizure disorder is controlled on medication. Supra. Similarly, although there are isolated reports of poor sleep habits and fatigue, Plaintiff's testimony regarding being sleep-deprived for years and/or extreme fatigue arising from one or more of her impairments are not well-supported by objective evidence. **********ALJ need not accept every allegation of debilitating symptoms*****

Based on the foregoing, the ALJ's finding that Plaintiff's allegations of fatigue, concentration and attention deficits, and memory loss are not supported in the record is a reasonable assessment, based on substantial evidence. Batson, 359 F.3d at 1193. Thus, although the ALJ's specific findings regarding Plaintiff's failure to discontinue smoking does not meet the clear-and-convincing threshold, the other rationales cited by the ALJ are supported by substantial

---

did report some staring "spells." Tr. 1023. In January 2011, Plaintiff continued to report no further episodes of confusion. Tr. 1026. Plaintiff did not report new instances of confusion or loss of time in August 2011. More than a year later, Plaintiff reported day-long memory loss. Tr. 1291. In October 2012, Plaintiff reported no more episodes of confusion or memory loss, but did state she had difficulty remembering to take her medication. Tr. 1293.

FINDINGS & RECOMMENDATION - 12

evidence, and should be upheld. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008) (Error in the ALJ's assessment of the credibility of some symptom allegations does not negate the valid rejection of other symptom allegations).

2. Lay Witness Testimony

Plaintiff contends the ALJ did not provide legally sufficient reasons to disregard the lay testimony of her father, James Helms. Lay testimony regarding a claimant's symptoms or how an impairment affects claimant's ability to work is competent evidence that an ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). Here, although the ALJ stated Mr. Helms' testimony was "possibly accurate," he nevertheless determined it warranted "little weight in describing disability" because it was not *based* on objective medical findings and not consistent with "the majority" of the medical record. Tr. 30. The Commissioner concedes that the ALJ erred to disregard Mr. Helms' testimony because it was not based on objective medical findings, but maintains the ALJ's second rationale is valid. Def.'s Br. 18.

Plaintiff disagrees, arguing that the blanket statement, "lay testimony is inconsistent with the medical record," is not sufficiently specific. Indeed, the Ninth Circuit has held that it is error for an ALJ to reject lay witness testimony simply because it is not corroborated by the medical record. Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing Smolen, 80 F.3d at 1289 ("Rejection of the [lay] testimony . . . because medical records did not corroborate [Smolen's] fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's symptoms are *unsupported* by her medical records.") (emphasis in original)). The Commissioner responds that Bruce is distinguishable to the extent the ALJ did

not reject Mr. Helms' testimony because it was *unsupported* by the medical record, but because it was *inconsistent* with it. Def.'s Br. 18. Considering the record before the Court, the Commissioner's argument is a distinction without a difference, as the thrust of Plaintiff's argument is not whether the testimony was unsupported versus inconsistent, but rather whether the ALJ proffered sufficiently specific germane reasons to discredit the lay witness.

Although an ALJ is only required to provide a reason germane to the lay witness to disregard testimony, the Ninth Circuit has also implicitly required that the germane reason be specific, and like all other administrative determinations, based on substantial evidence. For example, although a familial relationship is generally "germane" to a witness, "[t]he [mere] fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Smolen, 80 F.3d at 1288-89.[5] Similarly, the Ninth Circuit has held that an abstract financial interest in a plaintiff's receipt of benefits is not in itself sufficient to reject lay witness testimony. See Valentine v. Comm's Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (An ALJ may not rely solely on "characteristics common to all spouses" to discount a spouse's testimony.); see also Huffman v. Colvin, No. 1:14-cv-00861-AC, 2015 WL 5056029, at *8 (D.Or. Aug. 25, 2015) (unpublished case).

Accordingly, while inconsistency with the medical record may be germane to lay witness testimony, simply stating the testimony is inconsistent, without more, does not provide sufficient information for a reviewing court to assess the adequacy of the ALJ's finding. Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (citing Treichler, 775 F.3d 1090, 1103 (9th Cir. 2014) (42 U.S.C. 405(g) requires ALJ to provide discussion of the evidence and reason or reasons upon

---

[5] Nonetheless, a lay witness' close relationship to a plaintiff and possible pecuniary interest in a claim's outcome, when coupled with inconsistent medical evidence, has been found to be germane. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

which adverse decision is based)); see also Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497 (2004) (ALJ must provide sufficient reasoning such that the agency's path can reasonably be discerned). Here, the ALJ summarized the written testimony of Mr. Helms and provided the following analysis:

> The father reports that the claimant has the capacity to raise three young children, maintains a household, drives a motor vehicle, prepares food for her family, does laundry for her family, shops for groceries, and is able to carry at least one bag of groceries from her vehicle to her residence. It is possible that using a grocery cart as a walker is a coping mechanism for obesity, but the claimant is sufficiently able to ambulate. As to fetching items and putting them in the grocery cart, this is an activity even the young children could be taught to do, as is getting soiled clothing to the laundry room and back to where the items are stored. As for an unsanitary residence, this goes to the motivation of the claimant and not to her ability. Again . . . [although] the father reports that the claimant sleeps too much to maintain regular employment, such information is not found in these exhibits.

Tr. 30. Although the ALJ's assessment does not identify how Mr. Helms' statements are inconsistent with the medical record, however, the agency's path is discernable.

It is clear that the ALJ was attempting to illustrate that Plaintiff is not completely incapacitated, and to suggest how Plaintiff's children might assist her in mitigating her functional limitations. However, these rationales were not invoked in the ALJ's decision, and even if they had been, neither are valid objections to Mr. Helms' testimony. The former is not germane to him because neither he nor claimant alleged she was completely incapacitated, and the latter is completely irrelevant to the disability inquiry. Insofar as the ALJ found Mr. Helms' observation that Plaintiff "sleeps too much to maintain regular employment" not credible because it was "not found in these exhibits," the reasoning amounts to a finding that the statement is unsupported. However, the statement attributed to Mr. Helms is not part of his written testimony, but rather a letter written by Plaintiff's prior attorney. Tr. 872, 876. Plaintiff's attorney is not a valid lay

FINDINGS & RECOMMENDATION - 15

witness; the statement is therefore not relevant to this matter, and the ALJ did not err in rejecting it. See O.R.P.C. 3.7(a).

However, although the ALJ erred in failing to proffer a valid reason germane to Mr. Helms to reject his testimony, the error is harmless because Mr. Helms' affidavit does not establish a level of impairment greater than that contemplated in the RFC. Plaintiff does not allege that any portion of Mr. Helms' written statement establishes greater limitations than contemplated in the RFC. See Pl.'s Reply 18-19. Plaintiff's assertions that she requires some assistance shopping for groceries and doing laundry does not necessarily establish limitations beyond the RFC. While Mr. Helms' statement that Plaintiff is unable to perform daily household chores regularly suggests some level of impairment, the extent of the purported limitation is unspecified. Moreover, the RFC reflects Plaintiff does have some lifting and carrying limitations. Tr. 27. Thus, any error in according minimal weight to Mr. Helms' testimony is harmless, and does not warrant reversal of the Commissioner's non-disability decision. Molina, 674 F.3d at 1122.

## 2. Step Two Error

Plaintiff argues the ALJ erred by failing to find fibromyalgia and headaches severe impairments at step two of the sequential evaluation process. The step two inquiry is the "*de minimus* screening device to dispose of groundless claims." Yuckert, 482 U.S. at 153-54. Step two impairments "may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir 2005) (emphasis in original); see also SSR 85-28, 1985 WL 56856, *3.

Plaintiff first assigns error to the ALJ's failure to find fibromyalgia a severe impairment. The Commissioner contends the ALJ's omission of fibromyalgia at step two "was consistent with SSR 12-2p," however, the Commissioner's analysis describes only whether Plaintiff meets the Part A criteria of SSR 12-2p. Def.'s Br. 6. Plaintiff argues instead that she meets the criteria under Part B, which requires: (1) a history of widespread pain; (2) repeated manifestations of six or more FM [fibromyalgia] symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause the repeated symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p, 2012 WL 3104869, *3 (July 25, 2012). Plaintiff has adequately shown substantial evidence of a history of widespread pain. See, e.g., tr. 368, 402, 541, 544, 650, 1298. Plaintiff has also shown reported manifestations of six or more relevant symptoms, including: myalgias, muscle weakness, fatigue, memory loss, depression, anxiety, headaches, and insomnia. Pl.'s Br. 5-8; see, e.g., tr. 368, 391, 395-96, 431, 451, 541, 544, 554, 559, 571, 634-36, 647-48, 650, 822-23, 859, 1012, 1016-17 1167-68, 1180, 1298. The medical record also shows evidence that Joseph Lutt, M.D. ruled out connective tissue disease and inflammatory arthropathy when noting, "chronic 4 quadrant pain syndrome consistent with fibromyalgia." Tr. 544. Dr. Lutt also noted a prior neurologist had excluded myasthenia gravis. Tr. 542. As such, Plaintiff appears to meet the criteria under Part B of SSR 12-2p.

Plaintiff further argues the ALJ erred in failing to find her headaches and seizures severe impairments at step two. Pl.'s Br. 13-15. As described above, the administrative record contains numerous references to Plaintiff's reporting of headaches, which Plaintiff proffers as symptoms and/or signs related to fibromyalgia. However, there is no evidence, nor does Plaintiff provide evidence, that Plaintiff's headaches cause more than a minimal effect on her ability to perform work. Plaintiff alleges her headaches cause her to walk slowly based on a single chart note from

2007, but the chart note does not indicate her slow ambulation was due to headache. Tr. 645. Plaintiff also alleges her headaches cause difficulty in paying attention, but none of the chart notes she offers in support evinces a persisting inability to pay attention. See tr. 1012, 1291-93, 1298. Furthermore, the record indicates that Plaintiff's headaches resolved with medication. 1293. Thus, the ALJ did not err in omitting headaches as a severe impairment at step two.

Plaintiff also alleges the ALJ should have found her seizures were severe at step two. The ALJ recognized Plaintiff's seizure disorder in his step two discussion, but found it was not severe, as treatment notes by Dr. Friedman showed the seizure activity "was well-controlled with medication in combination with a normal EEG." Tr. 24. Plaintiff argues the seizures were not well-controlled, because in October and November 2010, she reported episodes of staring and loss of time, and Dr. Friedman indicated he might need to increase or change her medication. Tr. 1023-24. However, by January 2011, Dr. Friedman noted, "she [wa]s seizure-free on the increased dose of carbamazepine." Tr. 1026.

Plaintiff further argues her worsening seizure disorder is evinced by an abnormal second EEG and a temporary driving restriction in 2010 and 2012. Pl.'s Reply 7. Although Dr. Friedman noted Plaintiff's EEG "suggested the possibility of a generalized epilepsy," he subsequently reported the seizures were well-controlled after increasing Plaintiff's dosage of "Tegretol" (carbamazepine) in 2011. Tr. 1023, 1026, 1032, 1288. While the record reflects that Dr. Friedman later limited Plaintiff's driving based on reports of a seizure in September 2012, he noted that her Tegretol levels were low at the time. 1290, 1291. By the next month, Plaintiff's Tegretol levels were again "therapeutic" and Plaintiff reported no seizures, but as a precaution, the doctor advised her not to drive for three months. Tr. 1293. In February 2013, Plaintiff

reported confusion and/or seizure symptoms, but it was again noted that she had not taken her Tegretol as directed; she had "missed doses the last few days." Tr. 1298, 1300.

Thus, based on a thorough review of the medical record, the Court cannot conclude the ALJ's interpretation of the medical record – that seizure activity was well-controlled with medication – was not rational or based on substantial evidence. Tr. 24, 33; see Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (Impairments that can be controlled effectively with medication are not disabling within the meaning of the Act). Although Plaintiff offers an alternate interpretation of the record, the Court must uphold the ALJ's reasonable interpretation because it is supported by substantial evidence. Burch, 400 F.3d 676, 679 (9th Cir. 2005); see also Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997)

Although the ALJ erred in assessing Plaintiff's fibromyalgia, erroneous omission of impairments at step two is often harmless error if step two is decided in plaintiff's favor. Burch, 400 F.3d at 682. Here, Plaintiff contends fibromyalgia results in an inability to more than occasionally stoop, fatigue, concentration and memory problems, depression, and pain. However, Plaintiff does not articulate any specific functional limitations that preclude her from performing the jobs identified at step five. Pl.'s Reply 4-5, 19. Indeed, there is no objective medical evidence that any subjective fatigue symptoms prevent Plaintiff from performing the jobs identified at step five. Without specific clinical findings or endorsement by a qualified medical source, the Court may not overturn the ALJ's rational interpretation of the evidence. Batson, 359 F.3d at 1197. Accordingly, any error at step two is harmless.

 3. Medical Opinion Evidence

Plaintiff argues the ALJ failed to evaluate the medical opinion evidence of her treating physician and an non-examining state agency physician. The ALJ is responsible for resolving

conflicts in the medical record, including conflicting physicians' opinions. Carmickle, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living ("ADLs"). Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

Treating physician Dr. Kapka submitted a chart note from August 2010, which included a list of diagnoses and her opinion that Plaintiff "is unable to work for most typical job tasks." Tr. 880, 1096. The ALJ accorded the opinion "minimal to no weight," finding it conclusory and lacking information regarding "what the claimant is able to do, areas that may be compromised, or the effect of the different objective treatment records from [Dr. Kapka]." Tr. 32. Indeed, in the Ninth Circuit, an ALJ "need not accept the opinion of any physician if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see 20 C.F.R. § 416.927(c)(3).

Plaintiff argues that the ALJ erred by failing to recognize that the fibromyalgia was an "active" problem, and that he did not properly interpret Dr. Kapka's opinion that Plaintiff was unable to do "most typical job tasks." Pl.'s Br. 25. As discussed *supra*, the Court agrees the ALJ erred by omitting fibromyalgia at step two. Plaintiff asserts Dr. Kapka's statement should be fully credited because it is analogous to the situation in <u>Reddick</u>. There, the plaintiff alleged limitations from chronic fatigue syndrome, supported by his physician's opinion that "the specific limitations that Ms. Reddick has to keep her from performing any occupation on a full time basis are her myalgias, but even more importantly her chronic debilitating fatigue." <u>Reddick</u>, 157 F.3d at 720. The ALJ in <u>Reddick</u> disregarded the physician's opinion, finding it conflicted with other "more objective" assessments, was based on non-credible subjective complaints, and was solicited by Reddick's attorney. <u>Id.</u> at 725. The Court in <u>Reddick</u> held that the opinion should not be disregarded because it was solicited, that review of the record showed it was substantiated by objective findings, and the findings were not contradicted by any other examining physicians. <u>Id.</u> at 726-27.

<u>Reddick</u>, however, is readily distinguishable. First, the reasons the ALJ in the instant case disregarded the opinion are different. Whereas a treating physician's uncontradicted opinion may only be disregarded for clear and convincing reasons, an ALJ is not required to accept *any* opinion that is conclusory or inadequately supported by clinical findings. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005). As such, the ALJ's proffered rationale is stronger than those set forth in <u>Reddick</u>. Second, even assuming the rationales were equally probative, the medical opinions themselves are distinguishable. While the physician in <u>Reddick</u> opined that the plaintiff's impairments precluded *any* full-time occupation, Dr. Kapka's opinion was not as restrictive, as the inability to do "most typical job tasks" does not necessarily foreclose all full-

time work. Tr. 880, 1096. The ALJ explicitly addressed the scope of Dr. Kapka's opinion: "[Dr. Kapka] did not state that the claimant is incapable of working, or that she is unable to sustain all employment, meaning that the doctor acknowledges that the claimant continues to be capable of performing some employment." Tr. 32.

Accordingly, both of the ALJ's rationales for according minimal weight to Dr. Kapka's opinion are rational and based on substantial evidence. The Court agrees with the Commissioner that the doctor's opinion is conclusory, lacks sufficient explanation of the basis for the opinion, and does not include any specific limitations. Further, the ALJ's finding that the opinion allows the possibility that Plaintiff is capable of performing *some* work-related tasks, even if they are not "typical," is also rational and supported by the record.

Plaintiff further contends the ALJ failed to incorporate Dr. Kapka's June 2010 recommendation that Plaintiff elevate her feet, use compression socks, and address salt in her diet, related to her complaints of bilateral ankle swelling. Tr. 1246. The doctor attributed the problem to obesity and hormonal changes. Id. However, only two months later, Dr. Kapka's August 2010 list of active diagnoses did not include any reference to ankle or edema problems. Tr. 880, 1096. The ALJ was not required to include in the RFC an impairment that had not persisted or was not expected to persist for at least twelve months. Carmickle, 533 F.3d at 1165 (upholding ALJ's opinion that two-week doctor-ordered work limitation that was later discontinued was not probative as to long-term functioning). Moreover, Dr. Kapka's statement was framed as a recommendation rather than an imperative. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ is not required to incorporate doctor's recommendation as opposed to imperative). For these reasons, it was not error that the RFC did not include a limitation regarding elevating the lower extremities.

FINDINGS & RECOMMENDATION - 22

Based on the foregoing, the ALJ's rational findings regarding the opinions and the recommendation of Dr. Kapka should be upheld. Batson, 359 F.3d at 1197.

Plaintiff also assigns error to the ALJ according great weight to the medical opinion of Dr. Alley (and the other state agency non-examining physicians), because the opinions were rendered without the benefit of reviewing the entirety of the record. Pl.'s Br. 24-25; Pl.'s Reply 8. Indeed, Dr. Alley's opinion was rendered in 2007, more than 5 years before the last time Plaintiff's treating neurologist restricted her driving activities due to seizures. Tr. 346, 1293. The Court further acknowledges Plaintiff was treated again for seizures in 2013. Tr. 1300-01. However, as the Court has explained, Plaintiff's treating neurologist found her seizures were controlled with medication – her reported episodes in 2012 and 2013 both coincided with lab tests showing low levels of Tegretol, as well as reports that Plaintiff likely failed to follow her dosage regimen as directed. Tr. 1026, 1032, 1288, 1298, 1300. Further, even though Dr. Alley did not review the entire record, he nonetheless accounted for Plaintiff's history of seizures by precluding her from climbing ladders, ropes, or scaffolds. Tr. 341.[6]

Plaintiff also asserts that Dr. Alley overestimated Plaintiff's ability to lift and carry, as he opined she could lift/carry 50 pounds occasionally and 25 pounds frequently. Tr. 340. Plaintiff explains that Dr. Alley's finding is not supported by substantial evidence, as medical records from Dr. Friedman submitted after Dr. Alley's assessment reflect greater limitation. Pl.'s Br. 23-24. Relevantly, Dr. Friedman noted complaints of arm weakness in November 2010 and August 2011 (tr. 1023, 1032) and right-sided weakness and mild ataxia in September 2012 (tr. 1287, 1291). However, by October 2012, Plaintiff's station and gait were normal, and Plaintiff did not

---

[6] Though neither party addresses the issue, the ALJ also failed to include the climbing restriction in the RFC; however, the error is nonetheless harmless because the jobs identified at step five do not involve climbing.

FINDINGS & RECOMMENDATION - 23

report weakness. Tr. 1293. She also denied weakness in January 2011. Tr. 1026. Although she endorsed right-sided weakness on September 20, 2012, she expressly denied weakness seven days later. Tr. 1287, 1291. Further, despite Plaintiff's reported complaints, Dr. Friedman consistently found Plaintiff's motor examinations showed normal power, tone, and bulk in her extremities (tr. 1012, 1016, 1032, 1287, 1291), and/or that Plaintiff expressly denied weakness (tr. 1021, 1026, 1291, 1293). Thus, considering the infrequency of reports of weakness, and that reports of a mildly abnormal gait were limited to two visits in September 2012, the ALJ reasonably found Dr. Friedman's chart notes reflected "normal strength, motion, and coordination." Tr. 33. Accordingly, Plaintiff's assertion that Dr. Friedman's reports contradict Dr. Alley's lifting and carrying limitation is not persuasive.

4. RFC Formulation

Plaintiff argues the ALJ made several errors in formulating Plaintiff's RFC. The RFC is the most that a claimant can do despite her restrictions. See 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including a claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Similarly, an ALJ need include only credible limitations in questions to the VE. Batson, 359 F.3d at 1997.

Plaintiff's first assigns error to the ALJ's failure to incorporate limitations set forth by Dr. Alley. Although the ALJ purported to give "great weight" to Dr. Alley's opinion, the ALJ did not include all of the limitations Dr. Alley recognized. Tr. 32. Plaintiff contends, and the Commissioner concedes, that the ALJ erred by omitting Dr. Alley's limitation to only occasional

stooping due to fibromyalgia and history of degenerative disc disease. Def.'s Br. 7; tr. 341.

Nonetheless, the Commissioner argues the error was harmless, because all of the jobs the VE

identified at step five satisfied the limitation. Def.'s Br. 7. Plaintiff does not rebut the

Commissioner's assertion that the omission of occasional stooping was harmless error. See Pl.'s

Br. 23-24; Pl.'s Reply 9-10. Review of the relevant entries in the Dictionary of Occupational

Titles ("DOT") confirms the Commissioner's assertion that none of the jobs the ALJ identified at

step five require more than occasional stooping. See 1991 WL 687916 (Hand Packager, DOT

920.587-018); 1991 WL 672983 (Laundry Worker, DOT 361.684-014); 1991 WL 674719

(Cannery Worker, DOT 529.686-014). The case Plaintiff cites in support of her argument is

distinguishable because there, the ALJ identified jobs that were *incompatible* with erroneously

omitted RFC limitations. See March v. Comm'r of Soc. Sec. Admin., 462 Fed.Appx. 671, 673-

74 (9th Cir. 2011). Here, the jobs identified at step five remain compatible despite the omitted

limitation. Thus, the erroneous omission of the restriction to occasional stooping was not

harmful.

Plaintiff further asserts the ALJ further erred by failing to include in the RFC a provision

regarding vision deficiencies. Specifically, Plaintiff contends the ALJ failed to include a

limitation regarding color vision deficiency in addition to the fine visual discrimination

limitation. Tr. 31. The Commissioner argues that "any error in omitting the result of vision

changes . . . on Plaintiff's RFC was harmless, because the RFC accommodated these limitations

by restricting Plaintiff to no fine visual discrimination . . . ." Def.'s Br. 9. Regarding the

allegation of color vision, the Commissioner asserts the ALJ did not err because Plaintiff "never

alleged any functional limitation due to color vision deficiency[.]" Id.

Indeed, Plaintiff did not allege any limitation due to color vision deficiency, and despite numerous records from vision and eye specialists throughout the record, there is no mention of Plaintiff's alleged color vision deficiency. Accordingly, the Court cannot conclude the ALJ's RFC formulation was defective because it omitted a limitation that was not alleged at the time of the hearing. Moreover, represented claimants must raise all issues and evidence at their administrative hearings in order to preserve them on appeal in the Ninth Circuit. Meanel v. Apfel, 172 F.3d 1111, 1114-15 (9th Cir. 1999). The only exception to the rule is if the inclusion of such evidence is necessary to avoid a manifest injustice. Id.

Even if the evidence in question is considered, the Court is not persuaded that the test result at issue is (1) relevant or (2) probative. Plaintiff's argument relies on an internet source discussing a study of visual color deficiencies in children. See U.S. Dept. of Health, Educ., and Welfare, Color Vision Deficiencies in Youths 12-17 Years of Age United States, Centers for Disease Control and Prevention, National Center for Health Statistics, https://www.cdc.gov/nchs/data/series/sr_11/sr11_134.pdf. Reviewing the administrative record in conjunction with the reference material, the Court agrees that the visual tests at issue appear to indicate Plaintiff *may* have *some* level of color vision deficiency in addition to visual discrimination deficiency. See tr. 409; Pl.'s Br. 27 n.33 (describing American Optical Hardy Rand Rittler ("AOHRR") screening test).

However, even assuming the source Plaintiff cites is accurate and remains current despite its January 1974 publishing date, it does not establish the degree of Plaintiff's deficiency. Rather, the passage quoted by Plaintiff states: "Youths making one or more errors on the H-R-R screening plates were then given the diagnostic series to determine the specific type of deficiency . . , and severity of the defect, i.e. mild, medium, or strong." Supra. Thus, there are two

problems: first, the relevance of the source is in doubt, as the article pertains to "Youths 12-17 Years of Age," rather than adults in Plaintiff's age range. Second, the source does not set forth a rubric for evaluating the test results beyond an undefined level of color vision deficiency. As such, the source is of little probative value; Plaintiff has not shown that the test results denote even a minimal limitation on Plaintiff's ability to perform work.

In sum, although the ALJ erred in one facet of the RFC formulation, the error is inconsequential to the ultimate non-disability determination. Molina, 674 F.3d at 1122.

5. Step Five Errors

Plaintiff argues the ALJ erred by failing to address all of Plaintiff's limitations when posing hypothetical questions to the VE during the administrative hearing. The RFC and corresponding hypothetical question at step five must include all of the limitations supported by the administrative record. Osenbrock, 240 F.3d at 1163. In determining what occupations a claimant is able to perform, an ALJ typically relies on DOT, which is the agency's primary source for information regarding various requirements for each listed occupation. Plaintiff further contends the ALJ failed to establish Plaintiff could perform other work in the national economy.

Plaintiff argues that substantial evidence supports that she is unable to perform the position of laundry worker, as identified at step five. Tr. 35; see 1991 WL 672983 (DOT 361.684-014). She contends she is unable to do the job because as medium-exertion work, it requires occasional lifting of up to 50 pounds, frequent lifting and carrying of 25 pounds, and standing and walking for six hours in an eight-hour workday. However, as previously discussed, the ALJ did not err in crediting the lifting and carrying limitations set forth by Dr. Alley. Supra.

Plaintiff also contends she is precluded from the laundry worker job because it requires her to occasionally distinguish colors; however, Plaintiff's has not provided substantial evidence that her visual impairment is such that she cannot occasionally distinguish colors. Similarly, there is no medical evidence that Plaintiff's impairments require her to nap several times per day for up to an hour, as alleged. Accordingly, the ALJ did not err in finding Plaintiff's RFC allows her to perform the occupation of laundry worker.

Plaintiff also asserts she is unable to perform the job of cannery worker, 1991 WL 674719 (DOT 529.686-014. Plaintiff contends that the cannery worker job requires frequent "near acuity," which is precluded by the RFC limitation of "no fine visual discrimination." Pl.'s Br. 29; Selected Characteristics of Occupations Defined in the Revised DOT, Pt. A, § 06.04.31 (1993) ("SCO"). At the outset of the VE's questioning, the ALJ stated, "I'll assume consistency with the [DOT] unless you tell me . . . ." Tr. 52. The ALJ then posed the hypothetical question, including the limitation of no fine visual discrimination. The VE responded that Plaintiff's RFC would allow her to perform the job of cannery worker, despite the SCO's requirement of "near acuity." Tr. 54. Accordingly, the Commissioner argues the ALJ reasonably relied upon the VE's testimony in rendering his decision. Tr. 37.

However, the Court is not satisfied that there was no conflict between the SCO and the VE testimony, as a limitation precluding "no fine visual discrimination" seems to foreclose a job requiring "near acuity," based on the plain meaning of the terms. This very issue arose in a Seventh Circuit case, in which the Commissioner conceded that because the claimant's RFC precluded "fine discrimination," the VE erred by identifying a job that required frequent "near acuity." Overman v. Astrue, 546 F.3d 456, 462-63 (7th Cir. 2008). Although the case is not binding in the Ninth Circuit, the reasoning is persuasive, and the Court therefore adopts the

premise. As such, the ALJ failed to fulfill his obligation to ensure the VE's testimony did not conflict with the DOT, or that the testimony was otherwise supported by substantial evidence in the record. SSR 00-4p; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation). Nevertheless, the ALJ's error in identifying the cannery worker job is harmless because the ALJ identified another valid occupation at step five. Meanel v. Apfel, 172 F.3d 1111, 1114-15 (9th Cir. 1999).

Plaintiff also alleges she is unable to perform the final job identified at step five: hand packager. 1991 WL 687916 (DOT 920.587-018). Pl.'s Br. 29-30; Pl.'s Reply 12. Plaintiff argues the VE provided an incorrect DOT number, as he testified that it was identified in the DOT as 920.686-038. Tr. 54. The Commissioner is not responsive to Plaintiff's argument on this issue. See Def.'s Br. 7, 13. However, as above, even assuming the ALJ erred in relying on the VE's testimony, the error is harmless because the ALJ identified another valid job at step five. Meanel, 172 F.3d 1114-15; Molina, 674 F.3d at 1122 (error is harmless if it does not alter the ultimate non-disability determination).

### Conclusion

A judgment should be entered AFFIRMING the Commissioner's decision and DISMISSING this action with prejudice.

### Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 16, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS & RECOMMENDATION - 29

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of September, 2016.

_/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS & RECOMMENDATION - 30